UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATRINA WALKER, )<br>)<br>Plaintiff, )<br>-vs- )<br>)<br>WEATHERSPOON, et al., )<br>)<br>Defendants. ) | No. 1:12-cv-8571<br><br>Judge Ronald A. Guzman |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff Katrina Walker, by and through his attorneys, and submits this Memorandum of Law in opposition to Defendants' Motion for Summary Judgment:

## INTRODUCTION

Plaintiff brought civil rights action against police officers and city, alleging that defendants violated her Fourth Amendment rights when they failed to withdraw and continued to search her home and seize her person when it was immediately apparent that the premises did not match the allegations as set forth in the complaint for a search warrant. No matter which constitutional filter is applied to the facts at hand, summary judgment is not warranted.

## RELEVANT FACTUAL BACKGROUND

Plaintiff incorporates herein her Local Rule 56.1 Statement of Additional Facts and Response to Defendants' Local Rule 56.1 Statement of Facts.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Summary judgment is not appropriate when specific facts are set forth "showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Cooper v. Dailey*, 07-CV-2144, 2011 WL 4501557 (N.D. Ill. Sept. 28, 2011 As there are genuine issues of material fact in this case, the Defendant's motion for summary judgment must be denied.

## ARGUMENT

### I. Whether the Defendant Officers' Conduct Was Objectively Unreasonable is a Question for the Jury

The Defendants are correct in that the issue for Fourth Amendment claims based on the execution of a search warrant is whether the defendant officers' conduct was objectively reasonable under the circumstances. (R. 42, *Defendants Memorandum of Law in Support of Motion for Summary Judgment*, pg. 9, *quoting Molina ex. rel. Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003)). However, "whether the Defendant Officers reasonably should have known that there was a mistake in the warrants (and therefore should have immediately called off their search) was a genuine question of material fact for the trier of fact." *Cooper v. Dailey*, 07-CV-2144, 2011 WL 4501557 (N.D. Ill. Sept. 28, 2011). This is such a case. Here, the facts are clear that a reasonable jury could find that the Defendants were required to cease the search as soon as

they entered the building and discovered the discrepancies between the warrant and reality. *Cooper v. Dailey*, 07-CV-2144, 2011 WL 4501557 (N.D. Ill. Sept. 28, 2011).

"When officers discover ambiguity or a mistake in a search warrant that "put[s them] on notice of the risk that they might be in a [residence] erroneously included within the terms of the warrant," they are obligated to stop the search." *Garrison*, 480 U.S. at 87; *see also Jones v. Wilhelm*, 425 F.3d 455, 463 (7th Cir.2005) (plaintiffs' Fourth Amendment rights were violated where officer "knew the warrant did not particularly describe the place to be searched * * *, but failed to immediately stop execution and seek the necessary clarification of a warrant"); *Simmons v. City of Paris*, 378 F.3d 476, 479-80 (5th Cir.2004) ("when law enforcement officers are executing a search warrant and discover that they have entered the wrong residence, they should immediately terminate their search"). "[T]he [Supreme] Court has * * * recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Garrison*, 480 U.S. at 87. The validity of the search * * * depends on whether the officers' failure to realize the over breadth of the warrant was objectively understandable and reasonable." *Garrison*, 480 U.S. at 88; *see also Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (officers' "mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability"). *Cooper v. Dailey*, 07-CV-2144, 2010 WL 1415986 (N.D. Ill. Mar. 31, 2010).

As Judge Dow pointed out in *Cooper v. Dailey*, "[A number courts of appeals have concluded in analogous cases that the reasonableness of police officers' failure to realize that they were at a residence not anticipated in a search warrant is a question for the trier of fact." *Id.*;

*See Harman v. Pollock*, 446 F.3d 1069, 1085 (10th Cir.2006) (finding "material facts in dispute as to the reasonableness of the officers' delay in realizing that [garage was] a separate residence not anticipated in the warrant," where "officers had ample notice that the garage may have been a separate residence" and "[n]either plaintiff resembled any target described in the warrant or the underlying affidavit"); *Pray v. City of Sandusky*, 49 F.3d 1154, 1160 (6th Cir.1995) ("[i]t is for the trier of fact to determine, based on the credibility of the evidence before it, at what point the officers knew or reasonably should have known they were at the wrong residence"); *Dawkins v. Graham*, 50 F.3d 532 (8th Cir.1995) (where "objective facts available to the officers at the time of the raid distinguished [plaintiffs' residence] from the premises" that was the proper subject of the search warrant, reasonableness of officers' mistaken execution of warrant on wrong premises involved questions of fact precluding summary judgment); Liston v. County of Riverside, 120 F.3d 965, 977 (9th Cir.1997) (finding " 'triable issues' regarding the reasonableness of the detention, particularly as to whether it continued after the officers knew or a reasonable officer would have known that a serious mistake had been made"). *Cooper v. Dailey*, 07-CV-2144, 2010 WL 1415986 (N.D. Ill. Mar. 31, 2010).

    a. **The Defendants' Conduct Was Objectively Unreasonable**

The Defendants argue that the undisputed facts, reveal "nothing other than reasonable, proper, and undisputedly constitutional conduct on the part of the defendant officers in both obtaining and executing the search warrant in this case. (R. 42, pg. 7). In reality, nothing could be further from the truth, as the Defendants' reliance on the uncorroborated, unreliable and impeached information provided by the "tipster" was objectively unreasonable. *Draine v. Bauman*, 708 F. Supp. 2d 693, 701 (N.D. Ill. 2010). Indeed, the Seventh Circuit has recognized

4

that particular caution must be used when relying on informants. *United States v. L.C. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009) ("For all we know the [the CI] could have been a rival drug dealer, an angry customer, or had some other beef with [defendant], which is certainly a factor to consider when assessing the reliability of his statements.").

The Defendants rest their argument regarding the reliability of the warrant primarily on the fact that the "Jane Doe" appeared before a magistrate and that Judge Harmening found the Jane Doe to be credible. (R. 42, pg. 9). Although it is true that "when a search is authorized by a warrant, a court gives deference to the issuing judge's conclusion that probable cause was established," *United States v. Sims*, 551 F.3d 640, 643-44 (7th Cir.2008); *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir.2008), "…that deference is neither abject, nor "boundless." *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The Defendants cite to *Sims*, 551 F.3d at 645, for the proposition that warrants issued after the informant has appeared before a judge are "universally held valid." (R. 42, pg. 10) However, as Magistrate Judge Cole pointed out in *Draine v. Bauman*, 708 F. Supp. 2d 693, 699 (N.D. Ill. 2010) the court will " . . .defer to the issuing judge's initial probable cause finding if there is 'substantial evidence in the record' that supports his decision." *Draine v. Bauman*, 708 F. Supp. 2d 693, 699 (N.D. Ill. 2010) *quoting Sims*, 551 F.3d at 644. "…[A]n appearance before a judge does not automatically mean that an otherwise inadequate warrant automatically satisfies the probable cause requirement, and demeanor has limited utility, even in the less hurried setting of a trial." *Draine v. Bauman*, 705 F. Supp. 693 (N.D. Ill 2010, *quoting United States v. Wells*, 154 F.3d 412, 414 (7th Cir.1998) Posner, C.J. ("Judges fool themselves if they think they can infer sincerity from rhetoric and demeanor" and "weepy" performances.).

When a warrant affidavit is supported by an informant's tip, the court's inquiry into probable cause encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant. *Draine v. Bauman*, 708 F. Supp. 2d 693, 699-700 (N.D. Ill. 2010); *United States v. Sims*, 551 F.3d at 644; *United States v. Jones*, 208 F.3d 603, 609 (7th Cir.2000).

Applying those factors to this facts in this case reveals that the Defendants have not demonstrated probable cause. *Id*.

  i. The Police Could Not or Did Not Corroborate Any of J. **Doe's Information**

The J. Doe claimed to have purchased narcotics from a person she called "T." (Defendants' LR 56.1 Statement of Facts, ¶ 5)[1]. However, Officer Weatherspoon never found "T"and never talked to anyone that knew of "T." (Plaintiff's LR 56.1 Statement of Additional Facts, ¶¶ 16, 17, 19)[2]. In fact, the Jane Doe herself was unable to identify "T." (SOAF, ¶ 8). Officer Weatherspoon never learned "T's" true identity. (SOAF, ¶ 10). This should have given Office Weatherspoon pause.

Perhaps most remarkably, Officer Weatherspoon was given a telephone number that was purported to belong to "T," A direct line to the person he was allegedly trying to identify. Incredibly, Officer Weatherspoon chose not to dial it. (SOAF, ¶ 21, 22). Officer Weatherspoon never asked someone else to call it, or better yet, have the J. Doe call it. (SOAF, ¶ 22). Officer

---

[1] Defendant' Local Rule 56.1 Statement of Facts shall herein be referred to as "DSOF."
[2] Plaintiff's LR 56.1 Statement of Additional Facts shall herein be referred to as "SOAF."

Weatherspoon never attempted to investigate the number. *Id.* A simple, quick and easy method of corroboration was handed to Officer Weatherspoon and he chose to let it pass. *Id.*

Officer Weatherspoon never attempted to conduct a controlled buy at 4817 S. Shields. (SOAF, ¶ 23). He never canvassed the neighborhood or talked to the next-door-neighbors; he never talked to people in the street in an attempt to verify the existence of "T." (SOAF, ¶ 19).

Officer Weatherspoon never made any attempts to determine who lived at 4817 S. Shields. (SOAF, ¶ 25). Officer Weatherspoon never attempted to verify that the property at 4817 S. Shields was a single family home. (SOAF, ¶ 25). Officer Weatherspoon never utilized any websites or data-bases to determine who owned 4817 S. Shields. (SOAF, ¶ 25). Officer Weatherspoon never checked with the CPD contact-card data base or the Accurint system. (SOAF, ¶ 25). Officer Weatherspoon was an experienced narcotics officer, yet never checked with the Comcast or Verizon or Commonwealth Edison or People's Gas or the County Treasurer in an attempt to determine the owner. *Id.* According to Officer Weatherspoon's own admission, he had no independent information as to who lived at 4718 S. Shields. (SOAF, ¶ 24).

Further, the "J. Doe" claimed that "T" is always home and always has heroin for sale, "all day and night," and parks a gold, four door, Chrysler Concorde, next to his house. (SOAF, ¶ 14, 15). Yet Officer Weatherspoon, despite going by the house several times and sitting surveillance twice, never located or observed the gold car. (SOAF, ¶¶ 16). Certainly, a big, gold Chrysler, if it existed, would not be hard to find—particularly if its driver is "always home" and always open for business. *Id.*

Additionally, a 24-hour heroin dealer who was always home would have foot traffic indicative of drug dealing. Contrary to Jane Doe's claims, Officer Weatherspoon never saw any

unusual activity at 4817 S. Shields or observed foot traffic going in or out of the house. (SOAF, ¶ 18). The HIDYTA de-confliction submission indicated that the house was not the subject of another law enforcement agencies' investigation. (SOAF, ¶ 26).

Despite the opportunity, Officer Weatherspoon did not speak to Kevin and Kasey Graham before entering 4817 S. Shields, despite the fact that he had information that they had been inside the house moments before and that they were right there, in police custody. (SOAF, ¶ 33, 34; DSOF, ¶ 40; Plaintiff's Response to Defendants' Statement of Facts, ¶ 40).

Even the photograph taken from the Assessor's website fails to provide corroboration. The photo actually undermines the J. Doe's credibility, because the photo was outdated and showed the front windows to be boarded up. (SOAF, ¶ 28). In event, "that is not independent corroboration, it is merely self-validation." *Draine v. Bauman*, 708 F. Supp. 2d 693, 699-700 (N.D. Ill. 2010);

Simply put, Officer Weatherspoon did not, or could not, corroborate any of the information he received from the Jane Doe. In fact, much of what she told him was undercut by the instigation Officer Weatherspoon did investigate. The police had no information remotely suggesting that illegal activity of any kind was going on at Plaintiff's home and it was objectively unreasonable to proceed further given this lack of corroboration.

    ii.    **The Jane Doe Provided Very Little Detail**

According to Officer Weatherspoon, the Jane Doe was only able to provide a "vague" physical description and could not provide his full name. (SOAF, ¶¶ 7, 10). The "J. Doe" was unable, at any time, to identify anyone from police photos as "T." (SOAF, ¶ 6). She could not provide Officer Weatherspoon with a full name of the alleged heroin dealer. (SOAF, ¶ 10)

The Jane Doe could not provide the address for the target residence. (SOAF, ¶ 9). And perhaps most revealing, the "J. Doe" did not provide a description of the interior of 4817 S. Shields. (SOAF, ¶ 11). She didn't describe the kitchen, the front bedroom, the second bedroom, the master bedroom, the basement, or garage. (DSOF, ¶ 45; SOAF, ¶¶ 39).

But most telling, the Jane Doe did not mention to Officer Weatherspoon that the interior of the house was in disarray and disorganized with debris, clutter, mail, paper, boxes and large containers, strewn throughout the house. (SOAF, ¶ 11). This is particularly important, because the Defendants go to great lengths to highlight the degree of disarray and clutter within the residence. (DSOF, ¶¶ 47, 48, 69, 70, 71, 72). If the J. Doe had really been inside that house, the condition of the house as described by defendants and portrayed in Defendants' exhibits 4B – 4H, it would have been the very first thing she would have describe – and it should have stopped Officer Weatherspoon in his tracks when he entered. (DSOF, ¶ 49). This was a glaring omission by the J. Doe and it standing alone creates an issue of material fact as whether the Defendants were objectively unreasonable.

But the lack of detail doesn't stop there. Officer Weatherspoon did not know the quantity of heroin that the Jane Doe bought from "T." (SOAF, ¶ 12). He didn't know the price and he didn't know how many times she had purchased heroin from "T." (SOAF, ¶ 12). According to Officer Weatherspoon it is important to know how many times an affiant's J. Doe had purchased narcotics from the target. (SOAF, ¶ 13).

### iii. The Status of the Informant

The status of the individual reporting to the police is "significant in determining the credibility of the information he provides." *Draine v. Bauman*, 708 F. Supp. 2d 693, 700 (N.D.

Ill. 2010) "Identified eyewitnesses and victims are deemed reliable, *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir.2001), and so too may be confidential informants, see 2. LaFave, Search and Seizure, § 3.4(a) at 218, et seq., who stand on a very different footing than an unidentified tipster like "the John Doe," with whom the policed have had no prior involvement." *Cf. United States v. Hammond*, 351 F.3d 765 (6th Cir.2003) (where informant of unknown reliability told police that the defendant was growing marijuana on his property and police only confirmed that defendant lived on road claimed by the informant and that there was a gate across his property as claimed, the warrant was deemed to have been improvidently granted and not to have been supported by probable cause).

      Here, the primary source of information used to obtain the search warrant came from the J. Doe. (SOAF, ¶ 2). Officer Weatherspoon had little or no information about the tipster as he did not know the "J. Doe's" age or even remember if he asked the "J. Doe" for any identification. (SOAF, ¶ 4).

      The "J. Doe" had been arrested for theft, but Officer Weatherspoon did not know when she was arrested for what may be a crime of dishonesty. (SOFA, ¶, 5); *See, e.g., United States v. Papia*, 560 F.2d 827 (7th Cir.1977) (courts have split on the question whether prior convictions for crimes involving stealing, without more, are admissible for impeachment purposes under Rule 609(a)(2)).

      Prior to this case, the "J. Doe" had not provided any information, reliable or otherwise, to Officer Weatherspoon. (SOAF, ¶ 6). Officer Weatherspoon did not know if the "J. Doe" had ever previously testified before a judge for purposes of obtaining a search warrant. (SOFA, ¶ 6).

      Here, the fundamental reliability of the informant was woefully lacking.

iv.    **What the Judge Wasn't Told**

The Defendants rest their argument regarding the reliability of the warrant primarily on the fact that the "Jane Doe" appeared before a magistrate and that Judge Harmening found the Jane Doe to be credible. (R. 42, pg. 9).  Although it is true that "when a search is authorized by a warrant, a court gives deference to the issuing judge's conclusion that probable cause was established," "…that deference is neither abject, nor "boundless." *Draine v. Bauman*, 705 F. Supp. 693 (N.D. Ill 2010, quoting United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In a remarkably similar case, Magistrate Judge Cole pointed out in Draine v. Bauman, "the court will  . . .defer to the issuing judge's initial probable cause finding if there is 'substantial evidence in the record' that supports his decision." *Draine v. Bauman*, 708 F. Supp. 2d 693, 699 (N.D. Ill. 2010) quoting Sims, 551 F.3d at 644.

 "… [A]n appearance before a judge does not automatically mean that an otherwise inadequate warrant automatically satisfies the probable cause requirement, and demeanor has limited utility, even in the less hurried setting of a trial." *Draine v. Bauman*, 705 F. Supp. 693 (N.D. Ill 2010, *quoting United States v. Wells*, 154 F.3d 412, 414 (7th Cir.1998) Posner, C.J. ("Judges fool themselves if they think they can infer sincerity from rhetoric and demeanor" and "weepy" performances.).

 In this case, like *Draine*, it is informative to look to what Officer Weatherspoon failed to tell Judge Harmening. *Id*. Officer Weatherspoon did not inform Judge Harmening that: 1) the "J. Doe" could not identify "T;" 2) the circumstances under which he met the "J. Doe;" 3) the J. Doe was unable to provide the target address; 4) the J. Doe was unable to describe the interior of the residence; 5) he couldn't find the gold, Chrysler; 6) he sat surveillance and never saw any usual

11

activity; 7) he never saw foot traffic in and out of the house; 8) he never attempted to determine who lived in the house; 9) he had a phone number for the target; 10) he never bothered to call the number; 11) he never attempted a controlled buy. (SOFA, ¶ 27).

Officer Weatherspoon certainly never told Judge Harmening that the photo he handed to the judge was outdated and did not fairly and accurately portray the home as it looked on October 25, 2011. (SOFA, ¶ 28).

Like Draine, there was "no information known to the police to suggest that there was any illegal activity going on at the [Shields] address or that someone known as ["T'] had been selling drugs out of the [] house for at least [six months]. Like Draine, this warrant application "consisted of an accusation," and not probable cause. (SOAF, ¶ 18).

> v. Upon Entry It was Immediately Apparent That the Officers Were in the Wrong House

Upon entry, it was immediately apparent that the officers were in the wrong house as the officers were met with two major surprises. First, the house was in total disarray. (DSOF, ¶¶ 47, 48, 69, 70, 71, 72). There was debris, clutter, mail, paper, boxes and large containers, strewn throughout the house. (SOAF, ¶ 11). This information was not contained in the Complaint for Search Warrant and was not relayed to Officer Weatherspoon by the J. Doe. (Pl. Ex. B; SOFA, ¶ 11. There is little doubt that any reasonable office would have been given great pause if confronted with this major inconsistency. At the very best for the Defendants, it is an issue for a trier of fact to determine.

Second, upon executing the search warrant, Officer Weatherspoon and the search warrant team learned that the home was occupied by a Cook County Sheriff's Deputy. (SOFA, ¶ 36). The

officers were able to see Cook County Sheriff's uniforms, her badge and identification. (SOFA, ¶ 36.)

A reasonable jury could find that the Defendants were required to cease the search as soon as they entered the building and discovered the discrepancies between the warrant and reality. *Cooper v. Dailey*, 07-CV-2144, 2011 WL 4501557 (N.D. Ill. Sept. 28, 2011)

There are genuine disputes as to material facts that prevent a finding of summary judgment as to Counts I and II because the trier of fact can reasonably conclude that probable cause had dissipated, and that there was no basis for the two hour seizure of Plaintiffs and the search of her home. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const., Amend. IV. For a search to be constitutional under the Fourth Amendment, it must be reasonable. *Veronica Sch. Dist. v. Acton*, 515 U.S. 646, 653 (1995); *United States v. Husband*, 226 F.3d 626, 629-30 (7th Cir.2000). Generally, a search is not reasonable unless the government has a warrant supported by probable cause, or an exception to the warrant requirement exists. *United States v. Yang*, 286 F.3d 940, 944 (7th Cir.2002).

In this case, there was a warrant. The mere existence of a warrant, or probable cause to conduct a seizure or a search, however, does not end the question. *See e.g. BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986). Indeed, a police officer ―may not close her or his eyes to facts that would clarify the circumstances‖ of a seizure or search initially based on probable cause. *Id*. Rather, in some cases ―the original grounds supporting the warrant could be disproved by subsequent investigation‖ or the warrant could become stale because based upon discredited information. *United States v. Watson*, 423 U.S. 431, 432 n. 5 (1976). Therefore, it is a Fourth

Amendment axiom that ―probable cause may cease to exist after a [search] warrant is issued.‖ *United States v. Grubbs*, 547 U.S. 90, 96, n. 2, 126 S.Ct. 1494 (2006).

Such dissipation can occur either prior to the obtaining of the warrant, prior to execution of the warrant, or during the execution of the warrant. *See e.g. United States v. Bowling*, 900 F.2d 926, 932 (6th Cir.1990); *United States v. Wagner*, 989 F.2d 69, 75 (2nd Cir. 1993); United States v. Keszthelyi, 308 F.3d 557, 571-72 (6th Cir.2002) (the execution of the warrant over a two-day period was unreasonable, given that no contraband was found during the initial search); see also Guzman, supra, 565 F.3d at 397.

Determining whether probable cause has dissipated is no different from determining probable cause in general. *See e.g. United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993); and *see United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir.1984). When a definite and material change has occurred in the facts underlying the magistrate's determination of probable cause, the legal question of probable cause must be made anew. *Id*.

## II.   The Defendants Are Not Entitled to Qualified Immunity

"Qualified immunity in a warrant case can rest on an inquiry into whether a reasonably well-trained officer would have known that the search was illegal despite the judge's authorization." *Malley*, 475 U.S. at 345, 106 S.Ct. 1092; *United States v. Leon*, 468 U.S. 897, 924, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Wollin*, 192 F.3d at 624.

The Seventh Circuit has explained the analysis in this way in the exclusionary rule context:

> Police officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles. When evidence has been obtained pursuant to a subsequently invalidated search warrant, we will exercise our discretion and admit the evidence only if we are convinced, after review, it is appropriate to do so pursuant to *Leon's* exception to the exclusionary rule. That is to say, we will admit the evidence unless: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant

"No reasonable police officer could have concluded based on the information that Officer [Weatherspoon] had that there was a fair probability either that Doe was credible or his information reliable. The cases discussing reliability of informants and corroboration of their information show that that Officer [Weatherspoon] ought to have known his application did not establish probable cause." *Draine v. Bauman*, 708 F. Supp. 2d 693, 708 (N.D. Ill. 2010). At the very least, this is a question for the jury.

WHEREFORE, Plaintiff Katrina Walker respectfully requests that Defendants' Motion for Summary Judgment be denied.

Respectfully Submitted,

/s/Michael D. Oppenheimer
Michael D. Oppenheimer
Attorney at Law

<u>CERTIFICATE OF SERVICE</u>

  The undersigned attorney hereby certifies that on October 24, 2013, a copy of this Certificate of Service along with the attached pleading was served on all counsel of record *via* the Court's electronic filing system.

<u>/s/ Michael D. Oppenheimer</u>
Michael D. Oppenheimer

Erickson & Oppenheimer, Ltd.
118 S. Clinton, Suite 200
Chicago, IL 60661
312-327-3370