**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KATRINA WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No. 12-cv-8571 |
| | ) | |
| **CARL WEATHERSPOON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

While plaintiff voluntarily abandons numerous previously-asserted claims, plaintiff nonetheless persists in asserting claims arising from the execution of a facially valid search warrant procured through the sworn testimony of a uniquely credible informant who: (1) voluntarily came to the police to report criminal activity without any motive to lie, (2) provided detailed information to the police about her purchase of narcotics from plaintiff's residence on numerous occasions, and (3) was examined under oath and penalty of perjury by a judge who found her credible. In response to a long line of precedent holding no Fourth Amendment violation can be established in such cases, plaintiff relies exclusively upon case law without material resemblance to the present case. Additionally, even were this Court to find there was a technical violation of the Fourth Amendment, this case is a near-perfect candidate for summary judgment on the basis of qualified immunity insofar as plaintiff takes issue with the *legal application* of undisputed facts rather than the *facts themselves*. Under either scenario, summary judgment is warranted.

**I.      PLAINTIFF HAS ABANDONED NUMEROUS CLAIMS.**

At the outset, plaintiff has abandoned several claims and defendants are entitled to summary judgment on these claims. Specifically, plaintiffs' First Amended Complaint alleged causes of action for excessive force and state law claims of battery, assault, and intentional infliction of emotional distress. Doc. No. 26 at Cts. III, V, VI, VII. Defendants outlined various ways in which these claims are legally

defective and stated why defendants are entitled to summary judgment on those claims. *See* MOL at 18-21.[1] Plaintiff does not offer any response to these arguments and omits any reference to such claims. *See* Resp. As such, plaintiff has abandoned these claims. *See Palmer v. Marion County*, 327 F.3d 588, 597-598 (7th Cir. 2003)(party opposing summary judgment waives claims which it fails to respond or develop); *Walton v. U.S. Steel Corp.*, 497 Fed.Appx.651, 655 (7th Cir. 2012)(plaintiff waived claim by failing to raise it in response to summary judgment); *Seiser v. City of Chicago*, 2013 WL 1809916, *3 (N.D. Ill.2013)(plaintiff forfeited claims not addressed in response brief); *Garcia v. City of Chicago*, 2012 WL 601844, *9 (N.D. Ill. 2012); *De v. City of Chicago*, 2012 WL 6605009, * 23 (N.D. Ill. 2012)(same). Accordingly, defendants are entitled to summary judgment on Counts III, V, VI, and VII.

## II.     PLAINTIFF'S REMAINING FOURTH AMENDMENT CLAIMS ARE DEFICIENT.

Plaintiff's sole remaining claims assert that the defendant officers violated her Fourth Amendment right to be free of unreasonable searches and seizures. *See, generally,* Resp.; Doc. 26 at Cts. I, II. These related claims have essentially two separate facets: (1) whether the search warrant was properly issued; and (2) whether the manner of the execution of the search warrant itself was Constitutionally permissible. Resp. at 2-12. Despite the veritable mountain of undisputed facts supporting the issuance of the search warrant in this case (including a probing examination of the informant herself by the issuing judge), plaintiff spends far more time contesting the former rather than the latter. *Compare* Resp. at 4-12 *and* Resp. at 2-4, 12-14. Plaintiff's arguments in opposition are unavailing on both Counts.

## A.     The Issuance of The Warrant Was Constitutional.

## 1.      Plaintiff misstates the applicable legal standard.

At the outset, it is important to reiterate the appropriate legal standard applied to the issue of

---

[1] Citations herein are as follows: Defendants' Statement of Material Facts = "SMF at ¶ ___". Defendants' Addendum of Exhibits in Support of Summary Judgment = "Ex. ___ at ___." Defendants' Memorandum of Law in Support of Summary Judgment = "MOL at __." Plaintiff's Memorandum of Law = "Resp. at ." Plaintiff's Response to Defendants' Statement of Material Facts = "Pl.'s Resp. SMF at ¶ __." Plaintiff's Statement of Additional Facts = "Pl's Add. Facts at ¶ __."

whether the warrant in this case was appropriately obtained. In this regard, plaintiff's Response skips around legal issues and muddles the appropriate legal analysis to be applied on this issue. Specifically, relying heavily upon *Cooper v. Dailey*, 2011 WL 4501557 (N.D. Ill. 2011), plaintiff suggests that the standard to be applied is simply whether "the defendant officers' conduct was objectively unreasonable" and insists that such issue "is a question for the jury." Resp. at 2-4. *Cooper* did not address the issuance of a warrant for which the informant appeared and testified before the issuing judge; rather, the complaint for the search warrant was sworn out by the defendant officer alone as a result of the informant being a "confidential informant." *Cooper ex rel. Cooper v. Dailey*, 2010 WL 3824112 (N.D. Ill. 2010)("Dailey did not bring Lamar before Judge Ford when he was seeking the search warrants at issue; in fact Dailey has never brought a CI before a judge."). In this regard, the denial of summary judgment in *Cooper* on the issue of whether the warrant was validly issued hinged upon plaintiff's suggestion that "the confidential informant...did not exist." *Id.*, 2011 WL 4501557 at *3. Plaintiff wisely makes no such accusation here and, to the contrary, expressly admits that the informant in this case testified before Judge Harmening regarding the propriety of the issuance of the warrant and that Judge Harmening himself questioned the informant regarding her purchase of heroin. *See* Pl.'s Resp. SMF at ¶¶ 33-34, 37.

This distinction, of course, makes all the difference in the world. As plaintiff ultimately concedes, there is great deference afforded when a warrant is issued upon a finding of probable cause after a judge has the opportunity to personally hear the testimony of an informant. Resp. at 5; *see also U.S. v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008); *U.S. v. Sims*, 551 F.3d 640, 644-45 (7th Cir. 2008). Indeed, plaintiff ultimately admits that this Court must uphold Judge Harmening's finding of probable cause so long as there was a "substantial basis" for concluding that the search would uncover evidence of wrongdoing. *See* Resp. at 5 (conceding the Court must "defer to the issuing judge's initial probable cause finding if there is 'substantial evidence in the record' that supports his decision"); *see also Illinois v. Gates*, 462 U.S. 213,

238-39 (1983); *Junkert*, 610 F.3d at 367; *U.S. v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001). As such, the sole issue regarding the issuance of the warrant is simply whether Judge Harmening's decision was supported by substantial evidence. If so, deference must be given and summary judgment entered.

**2.      Plaintiff omits the most significant factor material to resolution of this motion.**

While plaintiff eventually hints at the appropriate standard to be applied to this Motion, plaintiff conspicuously omits highly relevant factors from the applicable legal standard to be applied. Resp. at 6. According to the Seventh Circuit, the relevant analysis is as follows:

> Where the affidavit is supported by an informant's tip, we examine the totality of the circumstances to determine probable cause. This inquiry encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant. Significantly, we also consider whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity. *Sims*, 551 F.3d at 643-44.

For obvious reasons, plaintiff omits the consideration of "whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity." Resp. at 5. It is undisputed that this significant factor strongly supports entry of summary judgment in this case. Pl.'s Resp. SMF at ¶¶ 33-37.

**3.      Plaintiff fails to analyze the majority of the applicable factors.**

In addition to omitting a highly relevant factor, plaintiff largely ignores the remaining factors as well. Specifically, of the *four* factors set forth in *Sims*, plaintiff only analyzes *two* of them (corroboration and amount of detail). Resp. at 6-12. The remaining "factors" discussed by plaintiff consist of blatant misrepresentation that the informant was "an unidentified tipster" and an irrelevant list of additional investigation techniques that plaintiff asserts the officers "could have done." *Id.*

**4.      Plaintiff's reliance on *Draine v. Bauman* is unpersuasive.**

Rather than faithfully applying the factors mandated by the Seventh Circuit, plaintiff appears to rely entirely upon the District Court case *Draine v. Bauman* in support of denial of the present Motion. Resp. at 4-12. However, Plaintiff's factual analogy to *Draine v. Bauman* barely passes the proverbial "smell test." Indeed, if anything, the distinctions noted in *Draine* support the entry of summary judgment.

First, *Draine* involved an informant who's "identity was unknown-he was a real John Doe." *Id.*, 708 F.Supp.2d at 700. The fact the **officer himself did not even know the name or any other information about the informant** was highly relevant. *Id.* Specifically, Judge Cole noted that:

> A further misleading aspect of the complaint for search warrant is the statement that "for the sake of personal safety," Officer Bauman was referring to the individual who purchased the heroin from Twan as "J. Doe." The statement is certainly susceptible of being read as representing that the police knew Doe's identity, but chose not to use his name in order to protect him. That was misleading since Officer Bauman said he did not know Doe's true identity. But the credibility to be accorded by the judge to Doe's allegations was in part a function of whether they were being made by someone known to the police-and thus perhaps answerable for falsehoods-or someone whose identity was unknown and thus might not have the same compunctions about lying and using them as a cat's paw for some personal vendetta. *Id.* at 701.

In this case, it is undisputed that the police did, in fact, know the identity of the informant. Pl.'s Resp. SMF at ¶ 11. Indeed, the officers used this information to run a criminal background check on the informant which revealed no convictions and a single misdemeanor theft arrest. *Id.* Moreover, the officers not only knew the identity of the informant but that of her *father* as well. *Id.* at ¶ 8.

Second, *Draine* involved an informant who was unable to give the police an exact location where he allegedly purchased narcotics but rather "merely referred to an area and then identified the single picture Officer Bauman obtained from the Assessor's office website of the building that seemed to correspond to Doe's general designation." *Id.* at 701. The tipster also could not describe the building in any detail, nor could he describe the interior of the house other than that the suspect brought the drugs from the rear of the house. *Id.* at 697, 704. This sequence of events is exactly the opposite of what

occurred in this case. Here, the informant gave a very detailed description of the residence, gave the police highly detailed directions on how to locate the exact house at issue, personally lead the police to the exact location in a police vehicle, and pointed out the exact house upon arrival. Pl.'s Resp. SMF at ¶¶ 10, 12. The problem Judge Cole had with the testimony in *Draine* was that the informant was unable to specify exactly where he purchased narcotics which was inconsistent with claims of doing so for over a year. *Draine* at 701, 704. In fact, the preferred method of driving to the location to have J. Doe identify the house in person was precisely how Judge Cole distinguished *Draine* from *U.S. v. Lloyd*, where the Seventh Circuit approved of this form of corroboration in upholding a search warrant. *Draine*, 708 F.Supp.2d at 704 ("The officer in Lloyd then drove to the location with the CI and observed a building matching the description on the corner the CI had indicated. He had the CI point out the window of the apartment."); *Lloyd*, 71 F.3d at 1263. Unlike *Draine*, the photo in this investigation was used solely as a second way to identify 4718 S. Shields for the judge. SMF at ¶ 36.

Third, *Draine* involved an informant for whom "circumstances strongly suggested that Doe was in some sort of police custody" which created the possibility of the informant "attempt[ing] to curry favor with the police" by providing information. *Id.*, at 701-02. Despite plaintiff's best attempts to cleverly distort the record,[2] the undisputed evidence is that the informant in this case was not, in fact, in custody or facing any other criminal penalties at the time she provided information to the police. SMF at ¶ 6. To

---

[2] Plaintiff disputes that J. Doe had not been arrested when she gave the information citing to a portion of Officer Weatherspoon's deposition where it appears he states J. Doe was arrested. Pl's Resp. SMF at ¶ 6. Officer Weatherspoon immediately corrects that misconception, however, making clear J. Doe had not been arrested, was not in any legal trouble, and was giving information on her own volition: "Q. That she had been arrested by these officers is that why she came to you? A. No, not that she was arrested by them. Was it your understanding that she had come voluntarily to report this information about "T"? A. Yes, she came voluntarily. Q. Okay. She wasn't there because, for example, she was in trouble, so she was trying to give up some information. Is that what your understanding was? A. Yes, that's my understanding. Q. Your understanding was that, that was not the case, correct? A. Right. She was willing then." Ex. 2 at 239:9-239:22. Officer Weatherspoon also conducted a background check which revealed only a prior unrelated misdemeanor arrest. SMF at ¶ 11; Pl's Resp. SMF at ¶ 11.

the contrary, it is undisputed that the informant advised that her reason for coming to the police was because "she was trying to do better, trying not to disappoint her parents, and trying to kick her [drug] habit." Pl.'s Resp. SMF at ¶ 32.

Fourth, there was no evidence in *Draine* that the informant ever specifically testified to a judge regarding his purchase of drugs from the subject location or any other relevant facts supporting probable cause (or even testified at all). To the contrary, the only evidence in *Draine* was that a Judge "interviewed" the informant in a police vehicle or outside thereof. *Id.* at 703-04. Indeed, there was no evidence that this Judge even asked the informant for any information relating to the issuance of the warrant insofar as the officer was not even present for this interview. *Id.* at 704-05 ("Officer Bauman did not remember whether the judge got into the car or stood on the sidewalk or even whether he was in the car. He was clear, however, that he did not hear any of what transpired between the judge and Doe. Thus, on the present record, it is impossible to know what questions the judge asked during the 'interview' of John Doe."). Here, it is undisputed that the informant gave sworn testimony under penalty of perjury and was asked numerous detailed questions by the Judge regarding her purchase of narcotics. Pl.'s Resp. SMF at ¶¶ 33-37. This distinction was highly material to Judge Cole. *See id.* at 705 ("We do not know what the judge asked of Doe and thus it is impossible to know what, if any, significance can be attached to the appearance, which could well have been perfunctory at best. Compare Sims, 551 F.3d at 644-645 (the issuing judge asked the informant, whose identity the police knew and who was the drug dealer's girlfriend, whether: (1) she was submitting her affidavit as 'John Doe' in fear of Sims retaliating against her; and (2) whether all information provided in the affidavit was true and correct)."); *see also Lloyd*, 71 F.3d at 1263 ("when a CI accompanies the officer and is available to give testimony before the judge issuing the warrant, his presence adds to the reliability of the information used to obtain the warrant, because it provides the judge with an opportunity to assess the informant's credibility and allay any

7

concerns he might have had about the veracity of the informant's statements").

**5.     Plaintiff's limited analysis of two of the *Sims* factors are largely non-responsive.**

As noted above, plaintiff only bothers to discuss the "corroboration" and "level of detail" factors of the *Sims* analysis and simply ignores the rest. Resp. at 6-12. Even were plaintiff's failure to analyze the majority of the applicable factors overlooked, plaintiff's analysis of these two factors is fatally flawed.

With respect to corroboration, plaintiff's definition of "corroboration" appears to be simply compiling a list of additional things the police "could have done" before obtaining a warrant including such absurdities as calling up "T" and apparently just asking him if he was selling drugs out of 4718 S. Shields, canvassing the neighborhood to see if neighbors would divulge that a drug dealer operated next door, and asking two individuals who were apprehended coming out of 4718 S. Shields immediately prior to the execution of the warrant if drugs were being sold there.[3] Resp. at 6-8. These suggestions run the gamut from the foolish (i.e. calling up a drug dealer to see if he will admit to drug dealing) to the potentially dangerous and self-defeating (i.e. canvassing an entire neighborhood to poll all of the residents about drug activity at a residence which would almost certainly "tip off" the drug dealer or invite violent retribution) to the obviously irrelevant (i.e. pausing during the actual execution of a validly executed warrant to interview people coming out of a residence to see if they would admit to drug activity there).

The fact of the matter is that there are *always* additional investigatory tools that could be utilized. However, the Seventh Circuit repeatedly holds that the potential for additional investigation is irrelevant.

---

[3] Plaintiff also claims the photo of the residence presented did not accurately represent the house as it existed at the time because the windows were boarded up.  Plaintiff entirely misstates Officer Weatherspoon's deposition testimony in this regard; Officer Weatherspoon did not testify that the windows of 4718 S. Shields were boarded up in the photo, but gave that as an example of how a Cook County Assessor's photo may sometimes differ from the current state of a house.  Def. Resp. to Pl's LR 56.1 at ¶ 28.  Indeed, defendants attach a color copy of the Cook County Assessor's photo as Exhibit 11 to defendants' Response to Plaintiff's Statement of Additional Facts, showing clearly none of the windows boarded up.  Officer Weatherspoon's deposition testimony was that he could not recall anything about the exterior of the house as depicted in the photo that was different from what he observed on October 26, 2013.  *Id.* (citing Ex. 2 at 165:13-165:17).

*See Sims*, 551 F.3d at 644 ("Although Sims argues that other investigative methods could have further corroborated Dean's statements, simply because these methods could have been done but were not does not in any way detract from what was done"); *U.S. v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000)("Jones questioned whether Officer Welsh was reckless in incorporating Jane Doe's allegations into his affidavit without first doing more to corroborate them. He opines, for instance, that Officer Welsh could have set up a controlled buy or conducted surveillance of his home to verify the veracity of Jane Doe's statements. The fact that Jones can point out additional things which could have been done but were not does not in any way detract from what was done"); *Beauchamp*, 320 F.3d at 742.

In this case, the officers did far more than is Constitutionally required to corroborate the information provided including checking the informant's history and circumstances to determine whether a motive to lie existed, obtaining specific details of the location of the subject residence, obtaining a detailed description of the interior of the residence and the occupants thereof, surveilling the residence and observing significant narcotics activity in the vicinity of the subject residence, and, most importantly, forcing the informant to swear under oath and under penalty of perjury in front of a judge that she had purchased drugs from plaintiff's residence over an extended (and recent) period of time.

With respect to plaintiff's analysis of the "level of detail" factor, plaintiff's arguments barely merit a response. Plaintiff's assertion of the "vagueness" of the physical description of the subject drug dealer is absurd. The informant provided: (1) the street name the person went by; (2) his race; (3) his sex (4) his age within 5 years; (5) his weight within 20 pounds; (6) his height within 2 inches; (7) his hair style; (8) the color of his eyes; and (8) the tone of his complexion. See Ex. 7. The fact that the informant was unable to give the police the name on her drug dealer's birth certificate is unsurprising and of no Constitutional significance. *See Hill v. California*, 401 U.S. 797 (1971)(aliases and false identification are common among criminals); *Brown v. Officer Patterson*, 1986 WL 9757, *3 (N.D. Ill. 1986). With respect to the

location she purchased narcotics, the informant did *better* than giving a street address; she told the police exactly how to get there and actually took them there. *See* Pl.'s Resp. SMF at ¶¶ 10, 12-13. As explained above, this is a far cry from the "self-validating" photo identification in *Draine*. *See supra* Part II.A.5.

In any event, insofar as this Court can review the Complaint for Search Warrant itself, plaintiff's claims of a lack of detail are easily dispelled by simply reviewing the document. This document contains two single-spaced pages of highly detailed information about the residence and the informant's purchase of narcotics therefrom including the length of time she had been purchasing drugs there (six months), the last time she purchased narcotics there (the day before), the manner in which she would arrange to buy narcotics with the subject, a physical description of both the exterior (brick single family home) and interior of the house (front family room immediately upon entry with a "side room" located a few feet away), the exact manner in which the narcotics were packaged and presented to the informant (in "a small plastic box containing numerous small clear knotted plastic bag"), and numerous other pieces of information. *See* Ex. 7. The suggestion that the informant failed to give detailed information is entirely false and a far cry from the "bare bones" complaint in *Draine*.

Finally, plaintiff argues that the informant failed to provide the appropriate level of detail because she did not mention that the house "was in disarray and disorganized" and that "[i]f the J. Doe had really been inside that house,...the condition of the house would have been the very first thing she would have describe..." Resp. at 9. This argument is nonsensical for several reasons. Insofar the level of detail factor relates to the initial *obtaining* of the warrant, the information learned upon *execution* of the warrant is irrelevant on its face. *See Beauchamp*, 320 F.3d at 742. More importantly, plaintiff expressly admits that the cluttered and disorganized condition of plaintiff's residence looked exactly like a house that was involved in narcotics activity. Pl's Resp. SMF at ¶ 49. It would not have been peculiar for a narcotics customer to fail to mention that a drug house actually looked like a drug house.

10

**6.      Plaintiff's suggestion that the informant was "an unidentified tipster" is provably false.**

While not explicitly identified as a relevant factor in determining the validity of the entry of a warrant by the Seventh Circuit, plaintiff asserts that the "status of the informant" as an "unidentified tipster" in this case is supportive of denial of the present Motion. Resp. at 9-10. This "factor" most certainly does not support plaintiff's contentions in any way, shape, or form. As set forth above, J. Doe was certainly not "an unidentified tipster" as in *Draine. See supra* Part II.A.4. To the contrary, the identity of the informant was known to both police and the issuing judge and a criminal background check was run on her using her personal information (which revealed no convictions and a single misdemeanor arrest). Moreover, the informant purported to be an eyewitness (indeed, a participant) to numerous narcotics transactions at plaintiff's residence. The informant also gave a credible reason for providing information to the police and gave no indication of an ulterior motive. Most importantly, the informant voluntarily subjected herself to the penalty of perjury to swear she purchased drugs from plaintiff's house. If anything, the status of the informant here is strongly supportive of the issuance of the warrant.

**7.      The remaining *Sims* factors support granting of this motion.**

As noted above, plaintiff fails to even give passing consideration to the remaining factors outlined by *Sims*. These remaining factors are "...the degree to which the informant has acquired knowledge of the events through firsthand observation..." and "...the interval between the date of the events and the police officer's application for the search warrant...." *Sims,* 551 F.3d at 643-44. It is obvious why plaintiff refuses to acknowledge these factors insofar as it is undisputed that the informant purported to have extensive first-hand experience of narcotics sales at plaintiff's home (Pl.'s Resp. SMF at ¶¶ 5, 9-10, 12-17, 28) and that such activity had occurred a mere 24 hours prior to obtaining the warrant (*Id.* at ¶¶ 28, 30). As set forth by *Sims*, the Court is to look at the totality of these factors in determining whether to countermand the highly discretionary deference given to an issuing judge to issue a search warrant. In this

11

case, as explained above, plaintiff has not come anywhere close to surmounting the heavy burden applicable to this case. *See Sims*, 551 F.3d at 645; *U.S. v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir.1995);*U.S. v. McGaughy*, 485 F.3d 965, 969-70 (7th Cir. 2007);*U.S. v. Koerth*, 312 F.3d 862, 866 (7th Cir.2002).

**B.      The Execution Of The Warrant Was Constitutional.**

Plaintiff half-heartedly argues that the actual execution of the warrant was Constitutionally invalid. Resp. at 12-14. Indeed, the majority of plaintiff's brief analysis on this issue is devoted to citing boilerplate legal doctrine without applying such doctrine to the facts of this case. *Id.* In sum, plaintiff essentially argues that "the officers were met with two major surprises" which plaintiff suggests should have mandated that the officers immediately abandon their otherwise lawful search: (1) that "the house was in total disarray"; and (2) that "the home was occupied by a Cook County Sheriff's Deputy." Resp. at 12. Neither of these factors is remotely close to rendering the search invalid and, in fact, these arguments are somewhat nonsensical.

First, plaintiff's assertion that any reasonable officer "would have been given great pause" if they found a house they suspected as being used for the sale of narcotics to be in complete disarray. Resp. at 12. Plaintiff avers again that "if the J. Doe had really been inside that house, the condition of the house ... would have been the very first thing she would have described...." *Id.* at 9, 12. This is nonsense. The undisputed evidence in this case is that the disorganized condition of plaintiff's residence looked exactly like a house that was involved in narcotics activity. Pl's Resp. SMF at ¶ 49. Had the house looked like a picture from a Pottery Barn catalogue, plaintiff may have a point. But the fact that J. Doe did not mention to Officer Weatherspoon that the house where she bought heroin looked like a house where one might buy heroin cannot extinguish probable cause. If anything, this appearance further bolstered that the police were in exactly the right place.

Second, the fact that defendants discovered during execution of the warrant that plaintiff was a

corrections officer for the Cook County Sheriff's Office is of little consequence. Again, the Supreme Court has specifically held that the fact that someone other than the target is present in the target residence at the time of entry does not immediately dissipate probable cause. *Los Angeles County, California v. Rettele*, 550 U.S. 609 (2007). Plaintiff does not dispute that the condition of the residence rendered it difficult for the officers to rule out whether anyone matching the description of "T" cohabitated with plaintiff or otherwise used the house as a base to sell heroin. Pl's Resp. SMF at ¶ 71. Plaintiff also does not contest that the officers left the house immediately after determining, to a reasonable degree of certainty, that "T," narcotics, or evidence of the sale of narcotics were not present. *Id*. at ¶ 69.

Moreover, as this Court is no doubt aware, the unfortunate reality is that one's status as a law enforcement officer does not *ipso facto* negate their potential involvement in the narcotics trade. Indeed, numerous high profile federal cases of this ilk have passed through the courtrooms of the Northern District of Illinois in recent years (i.e. Jerome Finnegan, Keith Watts, Glenn Lewellen, Alex Guerro, Antonio Martinez, Jr., etc.). To suggest that a police officer should stop in their tracks and cease performing legitimate police functions upon being presented with a badge and identification is nonsense.

Plaintiff's attempt to analogize this case to *Cooper v. Dailey*, 2011 WL 4501557 (N.D. Ill. 2011) is unpersuasive and *Cooper* is a round peg that plaintiff is trying to fit into a square hole. *Cooper* involved officers attempting to execute a warrant on a multiple unit "party house" where drugs were sold which turned out to be a single family home occupied by a family. *Id*. at *1-2. Moreover, the officers in *Cooper* continued to search the premises even after discovering this irreconcilable physical difference in the description and layout of the premises. *Id*. In this case, the residence was exactly as described: a single family home that had the undisputed appearance of a drug house. Pl.'s Resp. SMF at ¶¶ 45-49. Plaintiff also expressly admits that the police were required to spend a substantial amount of time attempting to locate her proof of residency and that the search was otherwise challenging because of the condition of

the premises. *Id.* at ¶¶ 70-73. After doing so, the officer promptly left the premises leaving many areas unsearched. *Id.* Again, searches of much greater duration and scope have been determined to be fully Constitutional. *See* MOL at 12 (citing cases).

**C.      Defendants Are Entitled To Qualified Immunity.**

Even were the Constitutional question close, this case is a near perfect candidate for qualified immunity. To defeat this Motion, plaintiff must prove that defendants' search warrant was based on information "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Junkert*, 610 F.3d at 369. Thus, the defendants "violated [plaintiff's] rights only if reasonably well-trained officers in their positions should have known that the testimony or affidavits they provided in support of the warrants would have failed to establish probable cause, so that they should not have applied for the warrants in the first place." *Beauchamp*, 320 F.3d at 742; *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *Lowrance v. Pflueger*, 878 F.2d 1014, 1017 (7th Cir. 1989)("In a § 1983 action based upon a violation of the fourth amendment, it is not sufficient to establish that an [search] warrant was 'defective' ... or that a [search] was made without probable cause.... Rather, the qualified immunity defense will shield the defendant from liability unless the record demonstrates that the defendant had no reasonable good faith belief in the legality of the [search]."). "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341.

Plaintiff cites no case finding officers to be objectively unreasonable in relying on search warrants obtained with an affidavit similar to the one here and under indistinguishable facts. To the contrary, the law is consistent that police officers may rely on an issuing judge's probable cause findings based on far less police work and less informant reliability than are found in this case. *See, e.g., U.S. v. Robinson*, 724 F.3d 878, 885-86 (7th Cir. 2013); *U.S. v. Miller*, 673 F.3d 688, 692-94 (7th Cir. 2012); *U.S. v. Garcia*, 528 F.3d 481, 485-87 (7th Cir. 2008); *U.S. v. Peck*, 317 F.3d 754, 757-58 (7th Cir. 2003); *Lloyd*, 71 F.3d at

1263; *Sims*, 551 F.3d at 644-45; *Montalvo v. Adreani*, 2013 WL 1181490, *4-7 (N.D. Ill. 2013); *Murray v. Maderak*, 2000 WL 705982, at *6-8 (N.D. Ill. 2000).

Instead, plaintiff cites again to *Draine v. Bauman*, her exclusive reliance on which is again misplaced. Resp. at 14-15. As set forth above, the bare bones affidavit in *Draine* is not comparable to the affidavit here, the reliability concerns with the anonymous tipster are not present with J. Doe, and the level of corroborating detail provided by J. Doe, particularly in identifying 4718 S. Shields by description, in person during a drive-by, and again by photograph under oath before Judge Harmening, was not present in *Draine*. Moreover, the court in *Draine* found that the defendants had *waived* any qualified immunity argument based on either the lack of clearly established law or the good faith analysis set forth in *Malley*. *Draine*, 708 F.Supp.2d at 705-08. In this case, if anyone has waived issues regarding qualified immunity, it is plaintiff. Plaintiff's Response contains absolutely no analysis of qualified immunity and consists exclusively of boilerplate case citations. Resp. at 14-15.

Finally, plaintiff's last-ditch argument that "[a]t the very least, this is a question for the jury" (Resp. at 15) is simply wrong. "[T]he 'objective reasonableness' standard was 'specifically designed to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment....'" *Lowrance*, 878 F.2d at 1019 n.6 ; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Greenberg v. Kmetko*, 840 F.2d 467, 472 (7th Cir.1988). As such, the relevant issue is the objective question of "whether a reasonable officer could have believed his actions were lawful in light of the law in effect at the time and the information he possessed." *Id*. Here, all of the material facts establishing qualified immunity are not in genuine dispute. As such whether the defendant officers were objectively reasonable in relying on Judge Harmening's finding of probable cause is a question of law. Pl.'s Resp. SMF at ¶¶ 3, 5, 6, 7-9, 11-18, 21-29, 31-55, 57-67, 70-73.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:     s/Graham P. Miller
                Graham P. Miller

Timothy P. Scahill (6287296)
Graham P. Miller (6290240)
BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030

16